1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                         EASTERN DISTRICT OF CALIFORNIA

8

9   WHIPPLE INDUSTRIES, INC.,       )      No. CV-F-05-0902 REC SMS
                                     )
10               Plaintiff,          )      ORDER GRANTING DEFENDANTS'
                                     )      MOTION TO DISMISS.
11           vs.                     )
                                     )      (Doc. 5)
12  OPCON AB; LYSHOLM TECHNOLOGIES   )
    AB; OPCON, INC.; & DOES 1-25,    )
13  inclusive,                       )
                                     )
14               Defendants.         )
                                     )
15  _____ )

16       On August 22, 2005, the court heard Defendants' motion to

17  dismiss Plaintiff's complaint pursuant to Rule 12(b)(3) of the

18  Federal Rules of Civil Procedure and forum non conveniens.  Upon

19  due consideration of the written and oral arguments of the

20  parties, the court GRANTS the motion as set forth below.

21  **I.  Factual & Procedural Background**

22       Plaintiff Whipple Industries Inc. ("Whipple"), a California

23  corporation, filed suit in Fresno County Superior Court against

24  Opcon Autorotor AB, a Swedish corporation; Lysholm Technologies,

25  AB ("Lysholm"), a Swedish Corporation; and Opcon Inc, a

26  subsidiary of Opcon AB, a New York corporation with its principal

                                    1

place of business in Connecticut (collectively "Defendants").
Defendants removed the case to federal court based on diversity.
Defendants are not citizens of California and the amount in
controversy is in excess of $75,000.

This action involves a dispute over a distribution agreement
for screw superchargers used in internal combustion engines.
Lysholm is the manufacturer of these screw superchargers.
Whipple became a distributor of the screw superchargers in North
America to customers other than original equipment manufacturers
("OEM") pursuant to a February 26, 1999 "Aftermarket Agreement"
between Whipple and Lysholm (the "Agreement").  The Agreement was
to remain in effect at least through December 31, 2007.

Whipple alleges that beginning in May 2004 Lysholm failed to
fill Whipple's orders for superchargers and thereby breached the
Agreement.  Compl. ¶ 34.  Whipple also alleges that Defendants
are selling superchargers to manufacturers who are not OEMs as
defined in the agreement, which is a further breach of the
Agreement.  Compl. ¶ 37.  The Complaint contains causes of action
for breach of contract, specific performance and unfair
competition and seeks declaratory and injunctive relief.

Defendants filed a motion to dismiss on July 18, 2005.
Defendants argue that venue is improper based on a forum
selection clause in the Agreement.  Defendants assert that the
Agreement requires claims be made in the courts of Sweden.
Plaintiff disputes the existence of a forum selection clause and
asserts that even if such a clause exists it should not be

1  enforced because the Agreement contravenes California public

2  policy and the convenience factors weigh in favor of keeping the

3  action in the United States.

4  **II.  Legal Standard**[1]

5      A motion to dismiss based on a forum selection clause is

6  treated as a motion to dismiss for improper venue and is brought

7  under Rule 12(b)(3) of the Federal Rules of Civil Procedure.

8  Argueta v. Banco Mexicano, 87 F.3d 320, 324 (9th Cir. 1996).

9  Unlike the case in a motion to dismiss based on Rule 12(b)(6), in

10  a Rule 12(b)(3) motion a plaintiff's pleadings are not accepted

11  as true and a court may consider facts outside the pleadings.

12  Id. (citing Supreme Court cases).  "[I]n the context of a Rule

13  12(b)(3) motion based upon a forum selection clause, the trial

14  court must draw all reasonable inferences in favor of the non-

15  moving party and resolve all factual conflicts in favor of the

16  non-moving party."  Murphy v. Schneider Nat'l, Inc., 362 F.3d

17  1133, 1138 (9th Cir. 2004) (finding rule for viewing facts under

18  Rule 56 summary judgment motion applies in Rule 12(b)(3) case).[2]

19

---

20      [1]  Notwithstanding the choice of law provision, the parties
have cited and argued only United States law with respect to this
21  motion, with the exception of a single citation regarding a
discrete issue.  See Nordenson Decl. ¶ 5.  None of the papers
22  submitted cite the Swedish statutes governing the interpretation of
contracts or the enforceability of forum selection clauses.  The
23  court construes the arguments in the moving papers as consent to
the application of United States law on this limited matter.
24      [2]  The court notes that the existence of the forum selection
clause is separate and distinct from the Rule 12(b)(3) issue.  The
25  directive in Murphy does not appear to apply to the issue of the
existence of the forum selection clause, which is decided according
26  to state contract law.

1    "Federal law governs the validity of a forum selection
2    clause." <u>Arqueta</u>, 87 F.3d at 324.  The Supreme Court's decision
3    in <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 92 S. Ct.
4    1907, 32 L. Ed. 2d 513 (1972), set forth the applicable standard.
5    A forum selection clause is prima facie valid and should be
6    enforced "absent some compelling and countervailing reason."  <u>Id.</u>
7    at 12.  The party challenging the forum selection clause must
8    "clearly show that enforcement would be unreasonable or unjust,
9    or that the clause was invalid for such reasons as fraud or
10   overreaching."  <u>Id.</u> at 15.  This "heavy" burden is on the party
11   seeking to avoid the forum selection clause because any
12   inconvenience the plaintiff would suffer by having to litigate in
13   the contractual forum was "clearly foreseeable at the time of
14   contracting."  <u>Id.</u> at 18.

15   **III.  Discussion**

16       **A.  Does the Agreement Contain a Forum Selection Clause?**

17       The Agreement, which was between Lysholm and Whipple, was
18   negotiated and finally agreed to on or about February 26, 1999 at
19   the Hilton Airport Hotel in Chicago, Illinois.  The Agreement was
20   signed in Sweden by Rolf Hasselström on behalf of Lysholm and in
21   Fresno by Art Whipple on behalf of Whipple.  Hasselström Decl.
22   Ex. A § 3.  Section 14 of the Agreement identifies the governing
23   law as follows: "This Agreement must be construed - and its
24   performance enforced - under the substantive law of Sweden,
25   without regard to any conflict of law principles."  Hasselström
26   Decl. Ex. A § 14.  The Agreement also contains the following:

4

19.   DISPUTE RESOLUTION
        This Agreement and the liabilities and obligations
        of both parties shall be interpreted pursuant to
        Swedish law.  Any dispute arising from this
        Agreement shall be settled by Swedish court law.

Hasselström Decl. Ex. A § 19 (emphasis added).  The second

sentence of section 19, underlined above, is the basis of the

current motion and a subject of dispute between the parties.

Defendants argue that there was a typographical error in the

second sentence and that an "of" was unintentionally omitted such

that the second sentence should read "Any dispute arising from

this Agreement shall be settled by Swedish court of law."

Hasselström Decl. ¶ 5; Stebäck Decl. ¶ 5.  Defendants seek to

have the court consider a 1998 Distributorship Agreement on which

Defendants say the Agreement was modeled.  The 1998 Distribution

Agreement was between Opcon and Whipple and contained the

following language:

        This Agreement and the liabilities and obligations of
        both parties shall be interpreted pursuant to Swedish
        law.  Any dispute arising from this Agreement shall by
        settled by Swedish court of law.

Hasselström Decl. Ex. B § 11 (emphasis added).

Whipple argues that the Agreement is fully integrated and

that California's parol evidence rule forbids the court from

looking beyond the four corners of the document.  Whipple admits

that the parties chose Swedish law to govern the interpretation

and enforcement of the Agreement as well as any disputes arising

under the Agreement, but argues that there is no forum selection

clause.  Whipple argues in the alternative that the evidence

offered is insufficient and that the Agreement was modeled after a 1994 aftermarket agreement between Eaton Corporation and Magnuson Products (the "Eaton-Magnuson Agreement"), not after the 1998 Distribution Agreement.  Whipple Decl. ¶ 7.

Whipple has made several objections to the evidence proffered by Defendants.  Except as discussed, <u>infra</u>, the objections are overruled.

### 1.  The Parol Evidence Rule

The parol evidence rule, codified in section 1856 of the California Code of Civil Procedure, prohibits the introduction of extrinsic evidence to contradict, "vary, alter or add to the terms of an integrated agreement."  Cal. Code Civ. P. § 1856; <u>Pacific State Bank v. Greene</u>, 110 Cal. App. 4th 375, 378-79 (2003) (quoting <u>Alling v. Universal Mfr. Corp.</u>, 5 Cal. App. 4th 1412, 1433 (1992)).  An agreement is fully integrated if it contains a clause stating that the contract is to be considered the complete and exclusive agreement between the parties.  <u>Id.</u> at 384.  Inclusion of an integration clause typically prohibits the introduction of parol evidence.  <u>Trident Ctr. v. Conn. Gen. Life Ins. Co.</u>, 847 F.2d 564, 568 (9th Cir. 1988).

The parol evidence rule has exceptions.  Section 1856 specifies that relevant parol evidence may be considered "[w]here a mistake or imperfection is put in issue by the pleadings." Cal. Code. Civ. P. § 1856(e).  Additionally, section 1856 "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section

1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud." Cal. Code. Civ. P. § 1856(g).

Section 1860, in turn, provides that "for the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge may be placed in the position of those whose language he is to interpret." Cal. Code Civ. P. § 1860. The official comment offers the following guidance:

> To arrive at the intention of an instrument, the situation of the parties and the subject-matter at the time of contracting should be considered. <u>The whole instrument should be taken together, and, if possible, effect be given to all its parts</u>, even though the immediate object of inquiry is the meaning of an isolated clause. If the words be ambiguous, the meaning may be gathered from contemporaneous facts which intrinsic testimony establishes.

Cal. Code Civ. P. § 1860 commissioner's note (emphasis added).

## 2. Integration

Whipple argues that the Agreement is fully integrated because section 20 states that it "represents the parties' final and mutual understanding" and "is the parties' entire agreement on this subject." Hasselström Decl. Ex. A § 20. Defendants have not argued that the Agreement is not fully integrated.

The court agrees with Whipple that the Agreement is a fully integrated document. This defeats Defendants' argument to the extent it relies on section 1856(b), which provides that the terms of a writing "may be explained or supplemented by evidence

1  of consistent additional terms <u>unless</u> the writing is intended
2  also as a complete and exclusive statement of the terms of the
3  agreement."  Cal. Code. Civ. P. § 1856(b).

4                  **3.   The Plain Language of the Agreement**

5       California law states that contracts must be "interpreted as
6  to give effect to the mutual intention of the parties as it
7  existed at the time of contracting, so far as the same is
8  ascertainable and lawful."  Cal. Civ. Code § 1636.  The parties'
9  intent is to be ascertained from the language of the contract, so
10 long as the "language is clear and explicit, and does not involve
11 absurdity."  <u>Id.</u> at § 1638.

12      "Although the intent of the parties determines the meaning
13 of the contract [citation], the relevant intent is 'objective' -
14 that is, the objective intent as evidenced by the words of the
15 instrument, not a party's subjective intent."  <u>Shaw v. Regents of</u>
16 <u>the Univ. of California</u>, 58 Cal. App. 4th 44, 54-55 (1997).
17 Additionally, the undisclosed intention of a party is "immaterial
18 under the objective theory of contract" and the "true intent of a
19 contracting party is irrelevant if it remains unexpressed."
20 <u>Houghton v. Kerr Glas Mfg. Corp.</u>, 261 Cal. App. 2d 530, (1968)).

21      California law also provides that "[w]hen, through fraud,
22 mistake or accident, a written contract fails to express the real
23 intention of the parties, such intention is to be regarded, and
24 the erroneous parts of the writing disregarded."  Cal. Civ. Code
25 § 1640; Defs.' Mot. at 9.  Civil Code section 3399 similarly
26 provides that:

                              8

1
2
> When, through fraud or mutual mistake of the parties,
> or a mistake of one party, which the other at the time
> knew or suspected, a written contract does not truly
> express the intention of the parties, it may be
> revised, on the application of the party aggrieved, so
> as to express that intention, so far as it can be done
> without prejudice to rights acquired by third persons,
> in good faith and for value.

3
4
5

6  Cal. Civ. Code § 3399.  This provision has been used to correct

7  mistakes made by a draftsman.  See Shupe v. Nelson, 254 Cal. App.

8  2d 693, 701 (1967); Berendsen v. McIver, 126 Cal. App. 2d 347,

9  352 (1954).

10      Here, the Agreement states that disputes "shall be settled

11  by Swedish court law."  Defendants assert that the Agreement does

12  not reflect the intent of the parties.  Mr. Hasselström, the

13  managing director of Defendant Opcon AB, the parent company of

14  Defendant Lysholm, avers that the choice of law provisions and

15  the forum selection clause were discussed at a meeting of the

16  parties in Chicago late in 1998.  Hasselström Decl. ¶ 3.  Mr.

17  Hasselström further avers that it was his and Lysholm's intent as

18  well as the intent of Whipple[3] that Swedish law would govern and

19  that disputes would be settled in a Swedish court of law.

20      Whipple argues in response that there was no mistake made.

21  Mr. Whipple avers that he did not intend to agree that disputes

22  regarding the Agreement must be resolved in Sweden by a Swedish

23  court and that the issue was never discussed.  Whipple Decl. ¶ 9.

24

25      [3] Mr. Hasselström obviously cannot attest to what Whipple's
    actual intent was; this statement is construed as what Mr.
26  Hasselström believed Whipple's intent to be.

9

Whipple argues that it agreed "that the contract be interpreted according to Swedish law and any dispute be resolved according to 'Swedish court law.'" Pl.'s Opp'n at 3.

Whipple fails to argue that Mr. Whipple's purported intent was communicated to Defendants and it is irrelevant to the objective question of the parties' mutual intent in entering into the Agreement.  Additionally, the phrase "Swedish court law" as used in the Agreement is not a term that is "clear and explicit" so as to facilitate interpretation of the Agreement.  The question thus becomes whether parol evidence is admissible to aid in that interpretation which, as mentioned, requires the applicability of an exception.

### 4.  Exceptions to the Parol Evidence Rule

As mentioned, the parol evidence rule does not prohibit the consideration of extrinsic evidence either "to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement" or when "mistake or imperfection" is asserted.  Cal. Code. Civ. P. §§ 1856(g), 1856(e).

### a.  Ambiguity or to Otherwise Interpret

Throughout its papers Defendants argue that the phrase "Swedish Court law" is subject to only the interpretation it offers because, viewed any other way, the phrase makes no sense or is ambiguous.  See McKeon v. Santa Claus of California, Inc., 230 Cal. App. 2d 359, 364 (1964) ("[t]he fact that one party questions the meaning of the words and clauses used in an agreement is at least evidence that there may be ambiguity").  If

10

1   a term is "fairly susceptible of either one of two constructions

2   contended for," extrinsic evidence may be considered.  MacIntyre

3   v. Angel, 109 Cal. App. 425, 430 (1952).  The California Supreme

4   Court has stated that the admissibility of extrinsic evidence

5   depends upon "whether the offered evidence is relevant to prove a

6   meaning to which the language of the instrument is reasonably

7   susceptible."  Pacific Gas & Elec. Co. v. G. W. Thomas Drayage &

8   Rigging Co., 69 Cal. 2d 33, 37 (1968).

9        Here, the parties offer two constructions of the phrase

10  "Swedish court law."  Defendants argue that the phrase "is

11  clearer if the word 'of' is included, so that the typographically

12  correct phrase becomes 'Swedish court of law.'  As written, the

13  only interpretation that can be given is that contract disputes

14  are to be resolved by Swedish courts."  Defs.' Mot. at 9.

15  Whipple argues in contrast that it agreed that disputes would "be

16  resolved according to 'Swedish court law.'"  Pl.'s Opp'n at 3.

17  Whipple does not argue that the word "court" was mistakenly

18  included in the Agreement.

19       As an initial matter, it is doubtful that Whipple's

20  construction of the Agreement is a meaning to which the Agreement

21  is "reasonably susceptible."  Whipple has presented no evidence

22  to support the contention that "Swedish court law" is a phrase

23  typically used, either in contracts or generally.[4]  In contrast,

24  ⎯⎯⎯⎯⎯⎯⎯⎯

25       [4]   Notably, in restating the language of the Agreement,
     Whipple substitutes the phrase "settled by Swedish court law" with
     the unambiguous phrase "according to Swedish court law."  Pl.'s
26   Opp'n at 3.

1   Defendants' counsel, Jan Gregorsson avers that the term "Swedish

2   court law" is "unknown to Swedish lawyers."  Gregorsson Decl. ¶

3   7.  The court's own research revealed no explanation for the

4   phrase "Swedish court law" other than the existence of a

5   typographical error.[5]  Under Whipple's interpretation, both

6   sentences of section 19 serve to designate Swedish law as the

7   governing law and the second sentence is redundant.  California

8   law provides that contracts be interpreted as a whole and every

9   part should be given effect "so that no clause is redundant."

10  Super 7 Motel Assocs. v. Wang, 16 Cal. App. 4th 541, 546 (1993)

11  (citing Lawrence Block Co. v. Palston, 123 Cal. App. 2d 300

12  (1954), *diapproved on other grounds*, Mattei v. Hopper, 51 Cal. 2d

13  119 (1958)); Cal. Civ. Code § 1641.

14      In short, the phrase "Swedish court law" is without

15  definition; only if the word "of" is included does the phrase

16  have a reasonable meaning.  Assuming for purposes of this motion

17  that the Agreement is reasonably susceptible of the

18  interpretation asserted by Whipple, the Agreement is nonetheless

19  ambiguous and subject to interpretation.  The parol evidence rule

20  does not prohibit extrinsic evidence in such circumstances.  Cal.

21  Code Civ. P. § 1856(g).

22      Defendants offer several pieces of evidence in support of

23

24      [5]  A search for "Swedish court law" in the all cases databases
    of both LEXIS and Westlaw resulted in two hits in LEXIS, both of
25  which were to the phrase "Swedish court of law." The same search at
    www.Google.com  and  www.Yahoo.com  returned  only  the  sentence
26  "Swedish court law system," which, even if citable authority, is
    not what the Agreement states.

1  its contention that the phrase "Swedish court law" is ambiguous

2  and that the proper construction of the phrase is "Swedish court

3  of law."  First is the declaration of Mr. Gregorsson, a member of

4  the Swedish bar who is familiar with the applicable principles of

5  Swedish law.  Gregorsson Decl. ¶¶ 1, 3.  He avers that:

> The phrase "settled by Swedish court law" is unknown to
> Swedish lawyers, but is close to an expression that is
> used regularly when the parties chose to have a dispute
> resolved in the Swedish courts, rather than by
> arbitration, namely that the dispute shall be "settled
> by Swedish court of law."

10  Gregorsson Decl. ¶ 7.  This statement is relevant opinion

11  testimony as to the meaning of the phrase "Swedish court law" in

12  the Agreement.[6]

13      Whipple argues in response that, in essence, there is a

14  Swedish equivalent to, for example, California common law as

15  opposed to California statutory law.  As mentioned, Whipple

16  offers no evidence in support of this assertion.[7]

17      Defendants also offer the 1998 Distribution Agreement

18  between Whipple and Opcon, which includes the phrase "Swedish

19  court of law," as evidence that the Agreement should be

20  interpreted to find a forum selection clause.  Whipple argues in

_____

[6]  This order relies only on the above-quoted language and Mr.
Gregorsson's qualifications for giving his opinion.  To the extent
Whipple's objection to the Gregorsson declaration relates to this,
it is overruled.

[7]  Sweden's legal system is based on civil rather than common
law.  See The Central Intelligence Agency, *The World Fact Book*,
Sweden, http://www.odci.gov/cia/publications/factbook/geos/sw.html
(updated August 30, 2005).  This, at the very least, makes it
unlikely that there is a significant body of court-made law in
Sweden,  unlike the United States' common law system.

1  response that the Agreement was based on the Eaton-Magnuson

2  Agreement rather than the 1998 Agreement.

3        Whipple is correct that on December 16, 1998, Lysholm faxed

4  a copy of the Eaton-Magnuson Agreement to Whipple with the

5  request that Mr. Whipple let Lysholm know if the wording was

6  acceptable and "we [Lysholm] will send you an Agreement with the

7  same wording."  Whipple Decl. Ex. E at 1.  On February 22, 1999,

8  Whipple provided Lysholm with a copy of Whipple's agreement with

9  Opcon.  Whipple Decl. Ex. E at 13 ("I'm sending you the Opcon

10 contract for you to read.  I would like my contract with Lysholm

11 to state I'm not in violation with my Opcon contract").  On

12 February 24, 1999, Lysholm faxed Whipple a copy of the final

13 Agreement, which contained the phrase "Swedish court law."

14 Whipple Decl. Ex. E at 15 - 22.

15       When Lysholm drafted the Agreement, it was in possession of

16 both the 1998 Agreement and the Eaton-Magnuson Agreement.  Mr.

17 Hasselström, the managing director of Lysholm's parent company,

18 was personally involved in the negotiations with Whipple and

19 avers that the Agreement was modeled after the 1998 Agreement.[8]

20 To the extent Whipple argues that the 1998 Agreement is not

21 relevant because Mr. Whipple requested that the Agreement be

22 based on the Eaton-Magnuson Agreement, the objection is

23 overruled.  Whipple provided Lysholm with the 1998 Agreement and

24 it is obvious from the face of the Agreement that Lysholm

25 ───────────────

26       [8]  Whipple's foundational objection to Mr. Hasselström's
   declaration is overruled.

14

incorporated both documents.  As Defendants point out, the two

agreements may be read together.  The Eaton-Magnuson Agreement

contains a choice of law provision stating that "This Agreement

must be construed - and its performance enforced - under the

substantive law of the state of Ohio, without regard to any

conflict of law principles."  Whipple Decl. Ex. E at 6 § 14.

Section 14 of the Agreement is identical except that "Sweden" is

substituted for "Ohio."

Section 19 of the Eaton-Magnuson Agreement is a detailed

dispute resolution provision and bears no resemblance to section

19 of the Agreement.  Rather, section 19 of the Agreement is

identical - except for the word "of" - to the 1998 Distribution

Agreement between Opcon and Whipple.  Because the two earlier

agreements do not conflict with each other, because Whipple was a

party to the 1998 Agreement, and because Lysholm had both

agreements before the draft of the Agreement was completed, both

agreements are admissible evidence regarding the proper

interpretation of the Agreement.  The Eaton-Magnuson Agreement

does not offer any guidance in interpreting section 19 of the

Agreement; the 1998 Distribution Agreement supports Defendants'

explanation of the Agreement.  It is only with the aid of this

evidence that the phrase "Swedish court law" becomes meaningful,

i.e. by inserting the word "of" such that the phrase becomes

"Swedish court of law."

### b.  Mistake or Imperfection

Defendants argue in the alternative that extrinsic evidence

15

is admissible pursuant to section 1856(e) because "mistake or imperfection of the writing" has been "put in issue by the pleadings."  Cal. Code Civ. P. § 1856(e).  The court agrees that subsection (e) is a second permissible means by which Defendants' evidence would be admissible.

As discussed, the only objectively reasonable interpretation of the Agreement is that proffered by Defendants, that a typographical error was made when section 19 of the Eaton-Magnuson Agreement was incorporated into the Agreement and that the phrase "settled by Swedish court of law" was intended to be included.  Only if the phrase reads that "disputes shall be settled by Swedish court of law" is it meaningful.  Given the senselessness of the construction proposed by Whipple, the plain language of the 1998 Distribution Agreement to which Whipple was a party and by which Whipple unarguably intended a forum selection clause, and the failure of Whipple to communicate an alternate intent, the mistake in section 19 of the Agreement is apparent and Whipple at the very least ought to have suspected the error.  Reformation in such circumstances is appropriate, Cal. Civ. Code § 3399, and the court finds that the Agreement contains a forum selection clause.  The next inquiry is whether or not the clause should be enforced.

**B.  Should the Clause be Enforced - The <u>Bremen</u> Factors**

In <u>Richards v. Lloyd's of London</u>, the Ninth Circuit explained that the Supreme Court in <u>Bremen</u>

identified three grounds for repudiating a forum

selection clause: first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, "if enforcement would contravene a strong public policy of the forum in which suit is brought."

135 F.3d 1289, 1294 (9th Cir. 1998) (quoting <u>Bremen</u>, 407 U.S. 12-13, 15, 18).  Whipple has not argued that the inclusion of the forum selection clause was the product of fraud or overreaching.

### 1.  Deprivation of Whipple's Day in Court

Mr. Whipple avers that "Whipple has been forced to lay off most of its employees and faces the loss of its business, harm to its reputation, and possible bankruptcy."  Whipple Decl. ¶13. Whipple further asserts that both it and Mr. Whipple "would suffer serious inconvenience if forced to litigate this action in Sweden."  <u>Id.</u>  Defendants argue in response that each party would be equally inconvenienced by having to litigate in the other's desired forum and assert that the "bottom line is that location of the witnesses in this day and age is both equally difficult for each side, yet both can travel to the other's location in less than a day."  Defs.' Mot. at 8-9.

The Court in <u>Bremen</u> stated that a party seeking to avoid the forum selection clause must show[9] "not only that the balance of convenience is strongly in favor of trial" in the plaintiff's

_____

[9]  Whipple argues that "[o]n balance, *Lysholm has not shown* that it would suffer comparable inconvenience by litigating in the plaintiff's forum of choice."  Pl.'s Opp'n at 14 (emphasis added). The Court in <u>Bremen</u> placed the burden of demonstrating inconvenience squarely on Whipple.  407 U.S. at 18-19.

17

1  chosen forum but also that a trial in the location designated by

2  the clause would "be so manifestly and gravely inconvenient to

3  [the plaintiff] that it will effectively be deprived of a

4  meaningful day in court."  Bremen, 407 U.S. at 19.

5      Whipple's argument is insufficient given this standard.  Mr.

6  Whipple's declaration lacks specific facts from which the court

7  could conclude that convenience strongly favors Fresno.  See

8  Murphy, supra, 362 F.3d at 1142 (considering declaration of

9  plaintiff regarding sources and use of income and plaintiff's

10 inability to travel due to medical disability to find that

11 litigating in designated forum would effectively deprive

12 plaintiff of his day in court).

13     Whipple cited Red Bull Assoc. v. Best Western Int'l Inc.,

14 862 F.2d 963 (2d Cir. 1988), in support of its opposition.  The

15 situation here is dissimilar to that in Red Bull.  There, a hotel

16 filed a civil rights suit as a private attorney general against

17 Best Western, its affiliated hotel chain, alleging that Best

18 Western terminated the hotel's membership in the affiliation due

19 to race discrimination.  Id. at 964-965.  The Second Circuit

20 upheld the non-enforcement of the forum selection clause based on

21 the district court's conclusion that if the case were

22 transferred, the hotel would be "unable or unwilling to pursue

23 it" and there were "significant public policy concerns" that

24 favored the hotel's activity as a private attorney general.

25 Accordingly, transfer of venue would have deprived the hotel of

26 its day in court.  Id. at 966.

18

1  The situation here is different.  In <u>Red Bull</u>, the civil

2  rights suit was filed by the hotel as a private attorney general

3  and was encouraged by Congress, and the court found that it would

4  be contrary to Congress' intent if the forum selection clause,

5  which could result in the hotel not prosecuting the claim, were

6  enforced.  This case is a contract dispute between private

7  entities, not an encouraged civil rights action.  Unlike the

8  hotel in <u>Red Bull</u>, which did not have a personal stake in the

9  litigation and was simply acting to enforce civil rights laws,

10  Whipple's interest in this case is manifest.  Finally, Whipple

11  does not aver that it would be wholly unable to prosecute the

12  case if the forum selection clause is enforced.

13  In sum, Whipple has not carried its "heavy burden" of

14  demonstrating that litigating this case in Sweden would be so

15  inconvenient as to deprive Whipple of its day in court.

16  ## 2.  Contravention of California Public Policy

17  The third <u>Bremen</u> factor supports repudiation of a forum

18  selection clause "if enforcement would contravene a strong public

19  policy of the forum in which suit is brought."[10]  Whipple argues

20  _____

21  [10]  Whipple asserts that the court in <u>Hall v. Sup. Ct. of</u>
<u>Orange County</u>, 150 Cal. App. 3d 411, 416, "noted that the United

22  States Supreme Court 'did not give blanket approval to forum
selection clauses; the holding was limited to cases where "[n]o

23  satisfying reason of public policy has been suggested . . ." to
deny enforcement of the forum selection clause.'" Pl.'s Opp'n at

24  10.  This is incorrect; the court in <u>Hall</u> was discussing the
California Supreme Court case of <u>Smith, Valentino & Smith, Inc. v.</u>

25  <u>Sup. Ct.</u>, 17 Cal. 3d 491, 496 (1976), not a United States Supreme
Court case.  As mentioned <u>supra</u>, federal law governs the

26  enforcement of a forum selection clause in federal courts, which
requires more than a suggestion of a "satisfying reason of public

19

1  that the forum selection clause should not be enforced because

2  enforcement of section 5 of the Agreement "would contravene

3  California's strong public policy against restraints on trade,"

4  and Swedish law may enforce section 5.[11]  Pl.'s Opp'n at 10.

5       Whipple is correct that section 16600 of the California

6  Business and Professions Code provides that "every contract by

7  which anyone is restrained from engaging in lawful profession,

8  trade, or business of any kind is to that extent void."  Cal.

9  Bus. & Prof. Code § 16600.  Whipple cites <u>Application Group, Inc.</u>

10 <u>v. Hunter Group, Inc.</u>, 61 Cal. App. 4th 881, 900-902 (1998), in

11 which the court of appeal refused to enforce a contractual choice

12 of law provision because doing so would contravene California's

14 policy."
            [11]   Section 5 of the Agreement provides:

         5.   <u>TECHNICAL ASSISTANCE AND NON-COMPETITION</u>
         Lysholm will provide Whipple with reasonable technical
         assistance  .  .  .  including copies of Lysholm's
         proprietary drawings and specifications if needed.
         Whipple must keep in confidence any proprietary
         information whether or not marked or otherwise noted or
         referred to as being confidential - including written or
         oral information . . ..  Whipple must not disclose any
         information concerning Lysholm's proprietary information
         to any other person or entity without Lysholm's prior
         written consent.  During the term of this Agreement and
         for three years after the termination of this Agreement,
         Whipple must not manufacture superchargers for combustion
         engines for which Lysholm or Eaton sold screw
         superchargers at any time during this Agreement, except
         as specifically permitted in this Agreement.  After the
         termination of this Agreement Whipple must not use any
         proprietary information furnished to it by Lysholm and
         shall promptly return all such information to Lysholm,
         upon Lysholm's request.

26 Hasselström Decl. Ex. A § 5.

strong public policy against enforcement of contractual non-competition provisions.  Whipple acknowledges in a footnote that the validity of the Agreement's choice of law provisions in Sections 14 and 19 is not before the court but asserts that they are not enforceable.  Pl.'s Opp'n at 12 n.6.

Defendants argue that Whipple's complaint is, at its core, a breach of contract claim and point out that Lysholm has not sought to enforce the restraint in section 5.  Defendants also argue that the facts alleged in Whipple's declaratory relief claim are insufficient because they do not allege an actual dispute.  Additionally, Defendants disagree that a California court would strike section 5 because it is a restriction that protects Defendants' trade secrets, proprietary information and confidential information and such restrictions are valid.

Whipple cites <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495 (9th Cir. 2000), in support of its argument.  In <u>Jones</u>, a franchisee filed suit against the franchisor in California, despite a forum selection clause requiring cases be filed in Pennsylvania.  <u>Id.</u> at 496.  The court upheld the district court's repudiation of a forum selection clause because California law specifically provides that a "provision in a franchise agreement restricting venue to a forum outside this state is void . . .."  <u>Id.</u> at 498 (quoting Cal. Bus. & Prof. Code § 20040.5).

The situation here is different from that in <u>Jones</u>.  There, the California law specifically held that restrictions on venue were void.  Here, the California law relates to restrictions on

1  competition and is unrelated on its face to venue.  The forum

2  selection clause determines where the case will be heard.  It is

3  separate and distinct from the choice of law provisions which,

4  Whipple acknowledges, are not before the court.[12]

5      Whipple's assertion that California public policy would be

6  contravened if the forum selection clause is upheld is

7  speculative.  For the court to determine that enforcing the forum

8  selection clause would violate California's public policy based

9  on Whipple's argument, the court would have to surmise that

10  Whipple will be able to successfully argue that California law

11  applies despite the choice of law provision in the contract.[13]

12      More importantly, as mentioned, Defendants are "not

13  attempting to enforce paragraph 5 in this action" and argue that

14  Whipple's declaratory relief claims as alleged is conclusory.

15  Defs.' Reply at 6-7.  That Defendants are not seeking to enforce

16  section 5 distinguishes this case from those cited by Whipple in

17  support of its position.  Whipple is correct that covenants not

18  to compete were held invalid under California law in both

19  _Application Group, Inc. v. Hunter Group, Inc._, 61 Cal. App. 4th

20

21      [12]  This is unlike the case in _Hall_, 150 Cal. App. 3d at 416,
   cited by Whipple, in which both issues were before the court and
22  the court stated that "a determination as to the validity of the
   choice of law provision [was] a prerequisite to a determination of
23  whether the forum selection clause should be enforced."
       [13]  Whipple submits a declaration from a Swedish attorney who
24  avers that the law in Sweden regarding non-competition clauses is
   one of reasonableness and not an outright prohibition.  Whipple
25  correctly points out that in enacting section 16600 California
   rejected the "reasonableness" analysis.  _Hill Medical Corp. v._
26  _Wycoff_, 86 Cal. App. 4th 895, 901 (2001).

22

1   881 (1998), and Hill Medical Corp. v. Wycoff, 86 Cal. App. 4th

2   895 (2001).  Application Group and Hill Medical are unlike the

3   situation here because in both of those cases an action seeking

4   to enforce the covenant not to compete had been filed.

5   Application Group, 61 Cal. App. 4th at 887 (California suit

6   seeking declaratory relief brought *after* employer had sued to

7   enforce covenant not to compete in Maryland state court; Maryland

8   case failed for lack of damage); Hill Medical, 86 Cal. App. 4th

9   at 897 (employer sought injunction based on covenant not to

10  compete).  In order to find that California public policy would

11  be contravened the court would have to assume without supporting

12  authority that Whipple's declaratory relief claim is sufficient

13  absent an attempt to enforce section five.[14]

14      Section 5 is tangential to this case at best.  Whipple's

15  complaint is, at its base, one for breach of contract and unfair

16  competition.  Notably absent from Whipple's arguments is any

17  assertion that Swedish courts are ill-equipped to address the

18  legal issues related to those causes of action.  Whipple's

19  argument regarding contravention of public policy is speculative

20  and insufficient to demonstrate that enforcement of the forum

21  selection clause would be "unreasonable and unjust."  See

22  Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 515

23

24      [14]  Even if a Swedish court were to reject Whipple's section
    5 declaratory relief claim, there is no harm since Defendants are
25  not seeking to enforce it. The situation would, of course, be
    entirely different if Defendants were seeking to enforce the
26  clause.  See Hill Medical, 86 Cal. App. 4th at  900-02.

99th Cir. 1988) (upholding enforcement of forum selection clause where plaintiff's contention of unreasonableness "speculative" and reflecting provincial attitude toward foreign tribunal).

**IV.  Conclusion**

The Agreement contains a forum selection clause, albeit with a typographical error, designating that disputes regarding the Agreement shall be settled by the courts of Sweden.  Whipple has failed to carry the "heavy" burden placed in it by <u>Bremen</u> of demonstrating that the forum selection clause should not be enforced and Defendants are entitled to dismissal.  Because the court finds in favor of Defendants as to the Rule 12(b)(3) issue, Defendants' arguments related to the doctrine of forum non conveniens will not be addressed.

**ACCORDINGLY, IT IS ORDERED** that Defendants' motion to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is hereby GRANTED.  The clerk shall close the case.

IT IS SO ORDERED.

**Dated:  September 7, 2005**                    **/s/ Robert E. Coyle**
ia40ij                                           UNITED STATES DISTRICT JUDGE